1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Scott Wesley Humphreys,

Plaintiff,

v.

Luke Burgher, et al.,

Defendants.

CASE NO. 3:18-CV-05736-RJB-JRC

REPORT AND
RECOMMENDATION

Noting Date: August 30, 2019

This 42 U.S.C. § 1983 civil rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1, MJR 3, and MJR 4. Before the Court is defendants' motion to dismiss. Dkt. 44.

Plaintiff alleges that, while incarcerated at Stafford Creek Corrections Center ("SCCC"), defendants failed to provide adequate medical treatment, harassed plaintiff, failed to protect plaintiff, failed to investigate and properly process his grievances, violated his due process rights, violated his equal protection rights, and violated his right to access to the courts. Dkt. 21. Defendants argue that plaintiff has failed to state a claim and move to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 44.

1       The Court finds that plaintiff has sufficiently alleged that defendant Burgher acted with

2 deliberate indifference when he failed to call the medical unit after plaintiff fell off the top bunk

3 of his bed. Thus, the Court recommends that defendants' motion to dismiss be denied as to this

4 claim. The Court recommends granting defendants' motion but allowing plaintiff leave to amend

5 his complaint with respect to plaintiff's claims against: (1) defendant Burgher for sexual

6 harassment; (2) defendant Bennett for sexual harassment and violations of plaintiff's right to

7 access to the courts and equal protection; (3) defendant Lystad for violations of the Eighth

8 Amendment related to plaintiff's medical treatment; (4) defendant Jolly for due process

9 violations; (5) defendant Sharpe for violations of access to the courts; (6) defendants Cardwell,

10 Casey, Gilbert, Haynes, Jones, Burgher, and Tornquist for failure to protect; (7) defendant

11 Haynes and Gilbert for supervisory liability; and (8) defendants Thrasher, Cotton, Corder, and

12 Walden for any constitutional violations cognizable under § 1983. Because plaintiff's claims

13 against defendant Burgher for harassment based on failing to wake plaintiff up for work and his

14 claims against defendants Cardwell, Casey, Gilbert, Haynes, and Tornquist related to their

15 investigation and processing of grievances fail as a matter of law, the Court recommends

16 granting defendants' motion to dismiss as to those claims without leave to amend.

17                           **BACKGROUND**

18        Plaintiff initially filed his complaint in September of 2018. Dkt. 1. In October 2018, the

19 Court screened plaintiff's complaint and found that he had not alleged personal participation by

20 any of the named defendants. Dkt. 8. The Court provided plaintiff with leave to file an amended

21 pleading by November 30, 2018 to cure the deficiencies. *Id.* On November 11, 2018, plaintiff

22 filed his first amended complaint. Dkt. 9. On February 19, 2019, the Court again declined to

23 serve plaintiff's first amended complaint but afforded him with another opportunity to file an

24

1    amended pleading. Dkt. 15. As part of that order, the Court found that plaintiff had sufficiently

2    stated an Eighth Amendment claim against defendant Burgher. Dkt. 15 at 4.  On March 4, 2019,

3    plaintiff filed his second amended complaint. Dkt. 16. On March 12, 2019, the Court ordered

4    plaintiff to file a third amended pleading, finding that plaintiff had not yet explained how the

5    actions of several defendants had violated his constitutional rights. Dkt. 20. On March 19, 2019,

6    plaintiff filed his third amended complaint, Dkt. 21, and the Court directed service on April 18,

7    2019. Dkt. 23.

8         Defendants Bennett, Casey, Cotton Haynes, Jolly, Jones, Lystad, Cardwell, Sharpe,

9    Thrasher, Tornquist, and Walden filed the motion to dismiss on June 17, 2019. Dkt. 44. On the

10   same date, these defendants served plaintiff with a copy of the motion to dismiss. *See id*.; Dkt.

11   45. On June 20, 2019, defendants Burgher and Gilbert filed a notice of joinder, having now

12   appeared in this action, to join in the pending motion to dismiss submitted by the other

13   defendants. Dkt. 51.

14        On June 19, 2019, the Court denied plaintiff's motion for discovery, motion for

15   deposition/amend complaint, motion to appoint counsel, and motion for depositions. Dkt. 47.

16   The Court also directed plaintiff to provide more specific information identifying defendant

17   Corder under seal on or before July 18, 2019. Dkt. 47. Plaintiff failed to file a response to the

18   Court's June 19, 2019 order. *See* Dkt. To date, defendant Corder has not filed a waiver of service

19   and counsel for defendants has not appeared on his or her behalf. *See* Dkt.

20        Plaintiff did not file a response to the motion to dismiss. *See* Dkt. However, on June 21,

21   2019, Plaintiff filed a motion for reconsideration of the court's order denying his motion to

22   appoint counsel, Dkt. 52, which the Court denied. Dkt. 53. On June 28, 2019, plaintiff filed a

23   motion for protective order, which the Court denied. Dkts. 54, 55, 56.

24

REPORT AND RECOMMENDATION - 3

**MATERIALS FOR CONSIDERATION**

Plaintiff attached several exhibits to his complaint including a copy of his grievances, two health services kites, and primary encounter reports related to his medical treatment. Dkt. 21 at 11-18. Because the materials were properly submitted as part of the complaint, the Court has considered these documents in addressing defendants' motion to dismiss. *See Gumataotao v. Dir. of Dep't of Revenue & Taxation,* 236 F.3d 1077, 1083 (9th Cir. 2001).

**OPERATIVE COMPLAINT AND PLAINTIFF'S ALLEGATIONS**

On April 18, 2019, the Court ordered service of plaintiff's third amended complaint ("the complaint"). Dkts. 21, 23. On June 19, 2019, the Court denied plaintiff's motion to amend complaint. Dkts. 37, 47. The Court concluded that plaintiff's motion did not include any factual allegations against the named defendants, thus, the relief sought was not clear. Dkts. 37, 47. The Court also noted that defendants had not yet filed an answer to the complaint (Dkt. 21), therefore, plaintiff did not need to seek leave from the Court in order to file an amended complaint. Dkt. 47.

In defendants' motion to dismiss, which was filed prior to the Court's June 19, 2019 order, defendants move for dismissal of whichever document the Court determines to be the operative complaint in this matter, either Dkt. 21 or Dkt. 37. Dkt. 44.

Plaintiff did not take any further action with respect to amending his complaint and did not file a fourth amended complaint. *See* Dkt. 47. Therefore, the Court concludes that the third amended complaint (the "complaint") is the operative complaint in this matter. Dkt. 21.

In the complaint, plaintiff alleges two separate claims related to his medical treatment. Plaintiff also alleges harassment, challenges his placement in segregation, claims related to access to the courts, claims related to the processing of his grievances, and that defendants failed to protect him.

Plaintiff alleges that in July 2016, plaintiff fell off the top bunk in his cell and landed on his head. Dkt. 21 at 5. Plaintiff alleges "I hit so hard to date I have problems[.]" *Id.* Plaintiff alleges defendant Burgher came to his cell door and asked if plaintiff was going to work. *Id.* Plaintiff responded that he had just fallen off the top bunk. *Id.* Defendant Burgher then stated "so you are not doing that." *Id.* Plaintiff alleges that he was in shock, "hobbled" to the restroom, and went back to his cell. *Id.* Plaintiff alleges that he pulled himself up the ladder and started shaking. *Id.* Plaintiff alleges that he went to get help and found defendant Burgher in the kiosk room, asleep. *Id.* Plaintiff asked defendant Burgher to call medical. *Id.* Defendant Burgher responded that he tried, but there was no answer and told plaintiff to try again during the next shift. *Id.*

Plaintiff alleges that he went back to his cell and waited for the next shift. *Id.* The Court notes plaintiff's handwriting is unclear in the complaint, but it appears that plaintiff asked his cellmate to get help and then went to the medical unit four hours later. *Id.* When plaintiff asked why no one answered his previous call, two non-party nurses stated that no one had called and someone is always in the medical unit. *Id.*

Second, plaintiff alleges that defendant Lystad stated she would schedule plaintiff for a C.T. scan for his headaches and blood coming from his ears. Dkt. 21 at 5. Plaintiff contends that defendant Lystad provided an x-ray for his sinuses. *Id.* Plaintiff alleges that he told defendant Lystad that he was coughing up blood with no response and that he requested a knee brace for his right knee, but defendant Lystad told him that he didn't meet the criteria. *Id.*

Plaintiff also brings separate claims of harassment. Plaintiff alleges that defendant Burgher was "brushing up" on plaintiff at mainline and failed to wake plaintiff up for work. Dkt. 21 at 9. Plaintiff alleges that defendant Bennett "patt[ed] her vagina in front of me, she has done this to other inmates." Dkt. 21 at 8.

Plaintiff alleges that defendants Bennett and Sharpe failed to assist him with a federal court order, which the Court interprets a violation of plaintiff's right to access to the courts. Plaintiff alleges that in February 2019, plaintiff contacted defendant Bennett and told her that he had a federal writ that provided leave to proceed. Dkt. 21 at 8. Plaintiff alleges that defendant Bennett told plaintiff to see her the next day and that she had an "APP" for plaintiff to fill out. *Id.* Plaintiff alleges that defendant Bennett never showed up and another correctional officer served plaintiff with his last response. *Id.* Plaintiff alleges that the following day, he showed defendant Bennett the federal court order and asked her what form or "APP" she had, and she stated that she did not know. *Id.* Plaintiff alleges that defendant Bennett told plaintiff he wasn't going anywhere. *Id.* Plaintiff also alleges that he notified defendant Sharpe that he had a federal court order granting leave to proceed and asked defendant Sharpe to contact defendant Haynes. Dkt. 21 at 8. Plaintiff alleges that defendant Sharpe walked away, failed to act, and failed to assist. *Id.*

Lastly, plaintiff makes several vague allegations of constitutional violations. Plaintiff alleges that defendant Jolly put plaintiff in the "hole" with a concussion. Dkt. 21 at 5. Plaintiff alleges that defendants Cardwell, Casey, Gilbert, Haynes, Jones, Burgher, and Tornquist failed to protect him. Dkt. 21 at 5, 9. Plaintiff alleges that defendants Cardwell, Casey, Gilbert, and Haynes failed to investigate and failed to address the issues he complained of in his grievances. *Id.* Plaintiff does not offer any additional facts in support of these claims. *See* Dkt. 21.

### STANDARD OF REVIEW

A motion to dismiss can be granted only if plaintiff's complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

1  draw the reasonable inference that the defendant is liable for the misconduct
   alleged. The plausibility standard is not akin to a probability requirement, but it
2  asks for more than a sheer possibility that a defendant has acted unlawfully.

3  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).

4      A complaint must contain a "short and plain statement of the claim showing that the

5  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the

6  statement need only give the defendant fair notice of what the . . . claim is and the grounds upon

7  which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted).

8  However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me

9  accusation." *Iqbal*, 556 U.S. at 678.

10     While the Court must accept all the allegations contained in the complaint as true, the

11 Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.*

12 "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

13 statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649

14 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to

15 state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court

16 is to construe a complaint liberally, such construction "may not supply essential elements of the

17 claim that were not initially pled." *Pena*, 976 F.2d at 471.

18

19                          **DISCUSSION**

20     In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he

21 suffered a violation of rights protected by the Constitution or created by federal statute, and (2)

22 the violation was proximately caused by a person acting under color of state law. *See Crumpton*

23 *v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to

24

REPORT AND RECOMMENDATION - 7

1   identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

2   (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually

3   named defendants caused, or personally participated in causing, the harm alleged in the

4   complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

5          As an initial matter, the Court notes that interspersed throughout the complaint, plaintiff

6   alleges general violations of the First, Fifth, Sixth, and Fourteenth Amendments. Dkt. 21 at 5, 9.

7   He also alleges the undersigned has "ruled" in plaintiff's favor. *See id.*  However, plaintiff

8   provides no basis for these claims and he fails to allege any facts in support. Therefore, the Court

9   will proceed to analyze plaintiff's complaint based on the issues raised in defendants' motion to

10  dismiss (Dkt. 44) and the allegations that are discernable and include enough particularity to

11  determine whether any named defendant caused the alleged violation.

12          **I.    Defendant Burgher**

13          Plaintiff alleges that defendant Burgher violated his constitutional rights when plaintiff

14  fell off the top bunk of his cell and defendant Burgher allegedly failed to call the medical unit.

15  Dkt. 21 at 9. Plaintiff also alleges that defendant Burgher harassed plaintiff by "brushing up" on

16  him and not waking plaintiff up for work. Dkt. 21 at 5, 9.

17          A.   Medical Need

18          Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary

19  and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation

20  omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment medical claim

21  has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the nature of the

22  defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991),

23

24

*overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-60.

If a plaintiff shows that he suffered from a serious medical need, he must then show that the prison official responded with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1970). Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id*. A prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious medical needs "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Deliberate indifference may exist when prison officials "deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Jett*, 439 F.3d at 1096 (internal quotations and citations omitted); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

1   The Court has previously determined that plaintiff's allegations against defendant

2   Burgher are sufficient to allege deliberate indifference. *See* Dkt. 8 at 4; Dkt. 15 at 4. In its

3   previous orders to show cause, the Court concluded that plaintiff adequately alleged that he had

4   notified defendant Burgher that he required medical assistance, but that defendant Burgher failed

5   to take any action in violation of the Eighth Amendment. *See id.*  Although the Court's prior

6   orders were based on plaintiff's prior complaints, the basis for his allegations remain the same in

7   the operative complaint now before the Court.

8   Defendants now appear to cite to case law that would compel a different result from the

9   Court's prior orders. *See* Dkt. 44. Defendants argue that isolated occurrences of neglect do not

10  amount to a constitutional violation. Dkt. 44 at 10 (citing *Wood v. Housewright,* 900 F.2d 1332,

11  1334 (9th Cir. 1990) and *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990)). However,

12  plaintiff must only plead sufficient facts for the Court to find it "plausible" that defendant

13  Burgher exhibited deliberate indifference to plaintiff's serious medical needs in violation of his

14  rights under the Eighth Amendment. *See Iqbal*, 556 U.S. at 681. Defendants have not cited to

15  authority that would lead this Court to reconsider its previous ruling on that issue.   Given the

16  plaintiff's allegations, if proven, may entitle plaintiff to relief. *See Keniston v. Roberts*, 717 F.2d

17  1295, 1300 (9th Cir. 1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1990)). *Twombly*,

18  550 U.S. at 545. Thus, consistent with the Court's prior orders, defendants' arguments remain

19  unavailing, and the Court concludes that plaintiff has alleged facts sufficient to demonstrate a

20  violation of his Eighth Amendment rights with respect to plaintiff's medical treatment claim

21  against defendant Burgher.

22

23

24

1    B.  <u>Harassment</u>

2        Plaintiff alleges that defendant Burgher harassed plaintiff when he "brush[ed] up" on

3    plaintiff at mainline and failed to wake plaintiff up for work. Dkt. 21 at 8.

4        First, "[s]exual harassment or sexual abuse of an inmate by a corrections officer is a

5    violation of the Eighth Amendment." *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012).

6    "In evaluating a prisoner's claim, courts consider whether 'the officials act[ed] with a sufficiently

7    culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to

8    establish a constitutional violation." *Wood*, 692 F.3d at 1046 (alteration in original) (quoting

9    *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). In determining whether conduct is objectively

10   unreasonable, courts must consider "the evolving standards of decency that mark the progress of

11   a maturing society," keeping in mind that "[t]he objective component of an Eighth Amendment

12   claim is therefore contextual and responsive to contemporary standards of decency." *Hudson*,

13   503 U.S. at 8 (quotation marks omitted).

14       However, not "every malevolent touch by a prison guard gives rise to a federal cause of

15   action." *Hudson,* 503 U.S. at 9. Rather, "[t]he Eighth Amendment's prohibition of 'cruel and

16   unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of

17   physical force." *Id.* at 9–10; *see also Berryhill v. Schriro,* 137 F.3d 1073 (8th Cir. 1998) (holding

18   that not all "unwelcome touches amount[ ] to unnecessary and wanton infliction of pain," and

19   that prison maintenance employees' conduct of briefly touching a prisoner's buttocks,

20   unaccompanied by any sexual comments or banter, was not sexual assault required to support the

21   prisoner's Eighth Amendment claim, as the touching lasted only seconds, and the prisoner

22   believed the employees were trying to embarrass him, not rape him); *Fisher v. Dizon,* 2008 WL

23

24

REPORT AND RECOMMENDATION - 11

1   619149 (E.D. Cal March 4, 2008) (a guard's act of poking an prisoner twice in the buttocks was

2   *de minimis* and was not an act of cruel and unusual punishment).

3          Claims premised on verbal sexual harassment or involving only brief inappropriate

4   contact without verbal comments causing public humiliation are generally found to be

5   noncognizable. *See, e,.g., Watison v. Carter,* 668 F.3d 1108, 1112-14 (9th Cir. 2012) (no Eighth

6   Amendment violation when guard approached prisoner while prisoner was on the toilet, rubbed

7   the guard's thigh against prisoner's thigh and smiled in a sexual manner); *Stewart v. Holland,*

8   2015 WL 8541651, at *2, 7 (E.D. Cal. Dec. 8, 2015) (no Eighth Amendment violation when

9   state official touched prisoner's hand with a finger in a suggestive manner after repeatedly

10  making sexually explicit and suggestive comments); *Klein v. Kimoto,* 2009 WL 3045858, at *2,

11  8-9 (D. Nev. Aug. 6, 2009) (no Eighth Amendment violation when state official rubbed

12  prisoner's back and ran a hand through prisoner's hair while telling prisoner his hair was soft).

13         Based on the foregoing, the Court concludes that plaintiff's allegation that defendant

14  Burgher "brush[ed] up" on plaintiff is insufficient to state a claim. In sum, without further factual

15  allegations, plaintiff's allegations do not implicate a harm of constitutional magnitude and he

16  fails to state an Eighth Amendment claim for sexual harassment against defendant Burgher.

17  Nevertheless, as noted below, plaintiff should be given an opportunity to file an amended

18  complaint to allege facts, if he can, that demonstrate how defendant Burgher's actions related to

19  "brushing up" on plaintiff violated his Eighth Amendment rights.

20         With respect to plaintiff's allegation that defendant Burgher failed to wake him up for

21  work, this allegation does not trigger a constitutional claim. There is no constitutional right to

22  prison employment or to be woken up for such employment. *McIntyre v. Bayer,* 2003 WL

23  21949154, at *1 (9th Cir. Aug. 13, 2003) ("prisoners do not have a constitutional right to prison

24

1    employment"); *see also Flittie v. Solem,* 827 F.2d 276, 279 (8th Cir. 1987) (*per curiam* )

2    ("inmates have no constitutional right to be assigned to a particular job"); *Ingram v. Papalia,* 804

3    F.2d 595, 596 (10th Cir. 1986) (*per curiam* ) ("The Constitution does not create a property or

4    liberty interest in prison employment."); *Lancaster v. Carey,* 2008 WL 3272081, at *2 (E.D. Cal.

5    Aug. 6, 2008) ("It is uniformly well established throughout the federal circuit courts that a

6    prisoner's expectation of keeping a specific prison job, or any job, does not implicate a property

7    or liberty interest under the Fourteenth Amendment."). Plaintiff has not alleged that he lacks the

8    minimal civilized measure of life's necessities which would implicate the Eighth Amendment.

9    Therefore, the Court finds no legal support for this claim against defendant Burgher. Although

10   leave to amend should be freely granted, the Court does not recommend leave to amend here

11   because dismissal is warranted based on the law on this issue, not on a failure to allege adequate

12   facts.

13        C.  Failure to Protect

14        Plaintiff also alleges that defendant Burgher failed to protect him, which will be

15   addressed below, *see* section VI.

16   **II.    Defendant Bennett**

17        Plaintiff alleges that in February 2019, defendant Bennett failed to assist plaintiff with a

18   federal court order. Dkt. 21 at 8. Plaintiff alleges that defendant Bennett helps other prisoners,

19   "mainly Black[.]" Dkt. 21 at 8.

20        A.  Access to Courts

21        Defendants interpret plaintiff's allegations against defendant Bennett as a "failure to

22   perform duty claim." Dkt. 44 at 11. Defendants allege that negligence in the performance of a

23

24

1   duty does not state a claim. *Id.* However, the Court construes this as an access to courts claim

2   pursuant to the Fourteenth Amendment and will analyze it as such.

3       The due process clause of the United States Constitution guarantees prisoners the right of

4   meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  In *Bounds,* the

5   Supreme Court held that the right of access imposes an affirmative duty on prison officials to

6   assist prisoners in preparing and filing legal papers, either by establishing an adequate law

7   library or by providing adequate assistance from persons trained in the law.  *Id.* at 828.  In *Lewis*

8   *v. Casey*, 518 U.S. 343 (1996), the Supreme Court held that a prisoner must show some actual

9   injury resulting from a denial of access in order to allege a constitutional violation.  *Id*. at 349.

10   An actual injury consists of some specific instance in which a prisoner was actually denied

11   meaningful access to the courts.  *Lewis*, 518 U.S. at 350–55 (1996).

12       Under the Fourteenth Amendment, persons incarcerated by a state must be given

13   meaningful access to law libraries or assistance by persons trained in the law in order to give

14   them meaningful access to courts.  *Bounds*, 430 U.S. at 822.  An incarcerated person does not

15   have a free-standing right to a law library, and it is prison or jail officials -- not the prisoner --

16   who chose the manner in which the state fulfills its obligation to provide access to courts.

17   *Storseth v. Spellman*, 654 F.2d 1349 (9th Cir. 1981).  Access requires state officials to assist in

18   the preparation and filing of meaningful legal papers by providing adequate law libraries or

19   adequate legal assistance from persons trained in the law. *Bounds,* 430 U.S. at 828; *Storseth*, 654

20   F.2d at 1352.

21       Aside from the conclusory allegation that defendant Bennett failed to assist plaintiff with

22   an "APP" or federal court order, plaintiff provides no details as to how he was prevented from

23   filing an action in court. *See* Dkt. 21. Nor has plaintiff alleged any actual injury in his complaint.

24

REPORT AND RECOMMENDATION - 14

There are no allegations that plaintiff was denied access to the courts in a non-frivolous direct criminal appeal, habeas corpus proceeding, or § 1983 case, nor are there allegations showing that plaintiff had a legal claim frustrated by the actions of Defendant Bennett. Thus, plaintiff fails to state an access to courts claim, and the Court recommends that defendants' motion to dismiss be granted as to this claim. Nevertheless, as noted below, the Court recommends granting leave to amend this claim.

   B.   Equal Protection

   Plaintiff alleges that defendant Bennett assists other prisoners who are "mainl[]y Black." Dkt. 21 at 8.

   To state an equal protection claim, a plaintiff first must show that he "has been intentionally treated differently from others similarly situated ...." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000); *Silveira v. Lockyer,* 312 F.3d 1052, 1087–88 (9th Cir. 2002), *cert. denied,* 540 U.S. 1046 (2003). "Similarly situated" persons are those "who are in all relevant respects alike." *Silveira,* 312 F.3d at 1088 (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)). To allege an equal protection violation based on race, religion, national origin, or alienage the plaintiff "must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. 'Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.' " *Serrano v. Francis,* 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original) (citing *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998) and quoting *Maynard v. City of San Jose,* 37 F.3d 1396, 1404 (9th Cir. 1994)), *cert. denied,* 543 U.S. 825 (2004); *Korematsu v.*

*United States,* 323 U.S. 214 (1944). Prisoners are not a protected class for equal protection purposes. *See Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir. 1997).

" 'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Navarro v. Block,* 72 F.3d 712, 716 n. 5 (9th Cir. 1995) (quoting *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979)). Some of the evidence that can establish discriminatory intent includes the "historical background of the decision ... particularly if it demonstrates there has been a series of official actions taken for invidious purposes ...." *Id.* at 716 (citation omitted) (internal quotation marks omitted). The mere fact that a facially neutral policy has a "foreseeably disproportionate impact" on a protected group, without more, does not rise to the level of an equal protection violation. *Lee,* 250 F.3d at 687.

Here, the mere fact that defendant Bennett took certain actions does not show that she acted with a discriminatory intent. Plaintiff's allegation, by itself, is not sufficient to state a claim. Plaintiff has failed to allege facts establishing a discriminatory intent by defendant Bennett on the basis of race. Thus, plaintiff fails to state an equal protection claim, and the Court recommends that defendants' motion to dismiss be granted as to the claims. Nevertheless, as noted below, the Court recommends granting leave to amend this claim.

C.   Harassment

Plaintiff alleges that defendant Bennett patted her vagina in front of him. Dkt. 21 at 8. Although prisoners have a right to be free from sexual abuse from prison employees, *see Schwenk v. Hartford,* 204 F.3d 1187, 1197 (9th Cir. 2000), the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment. *See e.g., Blueford v. Prunty,* 108

1    F.3d 251, 254–55 (9th Cir. 1997) (holding that prison guard who engaged in "vulgar same-sex

2    trash talk" with prisoners was entitled to qualified immunity); *Somers v. Thurman,* 109 F.3d 614,

3    624 (9th Cir. 1997). In *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004), the Ninth Circuit

4    concluded that an incident involving a guard that exposed himself to a prisoner, but never

5    touched the prisoner, was "not sufficiently serious to constitute an Eighth Amendment

6    violation."

7         Plaintiff alleges that defendant Bennett patted her vagina in front of him but does not

8    allege that she touched plaintiff. Accordingly, this is more akin to the cases cited above where

9    the courts conclude that verbal or conduct or even demonstrative conduct, even if offensive, was

10   not sufficient to constitute a constitutional violation.  Therefore, the Court recommends

11   plaintiff's Eighth Amendment sexual harassment claim against defendant Bennett be dismissed.

12   Nevertheless, as noted below, the Court recommends granting leave to amend this claim.

13        **III.    Defendant Lystad**

14        Plaintiff alleges that defendant Lystad told plaintiff that she would schedule him for a C.T.

15   scan for his recurring headaches and blood coming from his ear. Dkt. 21 at 5. Plaintiff alleges that

16   defendant Lystad provided an x-ray for his sinuses. *Id.* Plaintiff alleges that he told defendant

17   Lystad he was coughing up blood, and she did not respond. Dkt. 21 at 5. Plaintiff alleges that he

18   requested a knee brace for his right knee, but defendant Lystad told him he did not meet the criteria.

19   *Id.*

20        "[A] complaint that a physician has been negligent in diagnosing or treating a medical

21   condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

22   Medical malpractice does not become a constitutional violation merely because the victim is a

23   prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Jett v. Penner*, 439 F.3d 1091,

24

1   1096 (9th Cir. 2006); *Toguchi v. Chung*, 391 F.3d 1051, 1057, 1060 (9th Cir. 2004) (stating that

2   "[d]eliberate indifference is a high legal standard.").  Even gross negligence is insufficient to

3   establish deliberate indifference to serious medical needs. *See Toguchi*, 391 F.3d at 1060.

4       Here, plaintiff alleges that he received treatment from defendant Lystad – she ordered a

5   C.T. scan and x-ray. Dkt. 21 at 5. Plaintiff has not alleged any facts that suggest that defendant

6   Lystad's diagnosis and course of treatment was incorrect. Plaintiff's difference of opinion is not

7   sufficient to support an Eighth Amendment claim, and plaintiff has not alleged any facts which

8   suggest that defendant Lystad's diagnosis and treatment were medically unacceptable under the

9   circumstances and chosen in conscious disregard to an excessive risk to plaintiff's health. *See*

10  *Toguchi,* 391 F.3d at 1058 (internal quotation omitted). Accordingly, the Court recommends

11  plaintiff's claim against defendant Lystad be dismissed. However, the Court recommends

12  plaintiff be granted leave to file an amended complaint as to this claim.

13      **IV.    Defendant Jolly**

14      Plaintiff alleges that defendant Jolly put him in the "hole" with a concussion. Dkt. 21 at

15  5. The Court notes plaintiff alleges that this action constitutes a violation of his Eighth

16  Amendment rights, however, plaintiff does not provide the Court with any facts showing how his

17  Eighth Amendment rights were violated. Thus, plaintiff's allegations are properly analyzed in

18  relation to a due process claim.

19      Prisoners have a right to due process in connection with placement in administrative

20  segregation when such placement imposes an "atypical and significant hardship on the prisoner

21  in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 473 (1995);

22  *see also Ramirez,* 334 F.3d at 860. In *Sandin,* the United States Supreme Court held that a

23  prisoner in Hawaii had no liberty interest in freedom from a period of disciplinary segregation

24

1    that lasted thirty days where the evidence showed that the conditions in such segregation "with

2    insignificant exceptions, mirrored those conditions imposed on prisoners in administrative

3    segregation and protective custody," and the segregation did not "inevitably affect" the length of

4    his prison sentence. *Id.* at 486-87.

5         While administrative segregation "typically . . . in and of itself does not implicate a

6    protected liberty interest," it may do so under certain circumstances. *Serrano v. Francis*, 345

7    F.3d 1071, 1078 (9th Cir. 2003) (handicapped prisoner confined in administrative segregation for

8    two months without use of his wheelchair suffered an atypical and significant hardship), *cert.*

9    *denied*, 543 U.S. 825 (2004). *See also Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003)

10   (allegations of three-custody levels materially different from one another causing major

11   disruption to prisoner's environment sufficiently plead §1983 due process claim). "What less

12   egregious condition or combination of conditions or factors would meet the test requires case by

13   case, fact by fact consideration." *Kennan*, 83 F.3d at 1089.

14        In the limited circumstances where such a right exists, "due process requires only the

15   following procedures: prison officials must hold an informal non-adversary hearing within a

16   reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of

17   the charges against the prisoner or their reasons for considering segregation. Prison officials must

18   allow the prisoner to present his views." *Toussaint v. McCarthy,* 801 F.2d 1080, 1100 (9th Cir.

19   1986) (footnote omitted). "[D]ue process does not require detailed written notice of charges,

20   representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written

21   decision describing the reasons for placing the prisoner in administrative segregation." *Id.* at

22   1100-01.

23

24

1    Here, plaintiff alleges that he was placed in "the hole," or administrative segregation,

2    after having a concussion. Dkt. 21 at 5. Plaintiff does not, however, describe how the conditions

3    of his segregation amounted to an atypical or significant hardship. *See Sandin,* 515 U.S. at 484.

4    Thus, the Court finds that plaintiff has not sufficiently alleged facts supporting his claim that

5    defendant Jolly violated his due process rights. Thus, the Court recommends this claim be

6    dismissed, but that plaintiff be granted leave to amend.

7    **V.     Defendant Sharpe**

8    Plaintiff alleges that he informed defendant Sharpe that he had a federal court order

9    granting leave to proceed and asked him to contact defendant Haynes. Dkt. 21 at 8. Plaintiff

10   alleges that defendant Sharpe responded, "now why would I do a thing like that?" Dkt. 21 at 8.

11   Plaintiff alleges that he failed to assist plaintiff. *Id.*

12   As with plaintiff's access to courts claim against defendant Bennett, defendants interpret

13   plaintiff's allegations against defendant Bennett as a "failure to perform duty claim." Dkt. 44 at

14   71. Defendants allege that negligence in the performance of a duty does not state a claim. *Id.*

15   However, the Court construes this as an access to courts claim pursuant to the Fourteenth

16   Amendment and will analyze it as such.

17   As with plaintiff's similar claims against defendant Bennett, plaintiff has failed to

18   provide any details as to how he was prevented from filing an action in court. *See* Dkt. 21. Nor

19   has plaintiff alleged any actual injury in his complaint. *Bounds,* 430 U.S. at 821, 828. Thus,

20   plaintiff fails to state an access to courts claim against defendant Sharpe. The Court recommends

21   that defendants' motion to dismiss be granted as to this claim but that plaintiff be granted leave

22   to amend.

23

24

**VI.    Defendants Cardwell, Casey, Gilbert, Haynes, Jones, Burgher, and Tornquist**

Plaintiff alleges defendant Cardwell failed to inform defendant Haynes of the "ongoing problems," failed to protect plaintiff, and violated his right to petition the government for a redress of grievances. Dkt. 21 at 9.  Plaintiff alleges that defendant Casey failed to protect plaintiff and failed to investigate all problems. Dkt. 21 at 9. Plaintiff alleges that defendant Gilbert failed to protect plaintiff and failed to address the issues he complained of in his grievances. Dkt. 21 at 9. Plaintiff alleges that defendant Haynes failed to investigate, failed to respond, and failed to protect plaintiff. Dkt. 21 at 9. Plaintiff alleges that defendant Jones failed to protect plaintiff, "stripped inmates of virtually every means of self-protection and for[e]closed their access to outside aid government…." Dkt. 21 at 5. In addition to the claims outlined above in Section I., plaintiff also alleges that defendant Burgher failed to protect him. Dkt. 21 at 5. Plaintiff allegations against defendant Tornquist are not entirely clear, but it appears that he alleges that defendant Tornquist failed to protect plaintiff. Dkt. 21 at 5.

To the extent plaintiff alleges that defendants Cardwell, Casey, Gilbert, Haynes, Jones, Burgher, and Tornquist failed to protect plaintiff, the Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen,* 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Farmer*, 511 U.S. at 833-34 (quotation marks omitted); *Clem v. Lomeli,* 566 F.3d 1177, 1181 (9th Cir. 2009); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to a prisoner; and it

is well settled that deliberate indifference occurs when an official acted or failed to act despite

his knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 841 (quotations

omitted); *Clem*, 566 F.3d at 1181; *Hearns*, 413 F.3d at 1040.

Here, plaintiff's allegations fail to give rise to a cognizable failure to protect claim under

the Eighth Amendment. The factual basis for plaintiff's failure to protect claim is entirely

unclear. Plaintiff has not identified any actions that believes impinged on his constitutional rights

and asserts nothing more than a conclusory and speculative allegation. Accordingly, the Court

concludes that plaintiff's failure to protect claim against defendants Cardwell, Casey, Gilbert,

Haynes, Jones, Burgher, and Tornquist be dismissed. However, the Court recommends plaintiff

be granted leave to file an amended complaint alleging facts, if any, to support this claim.

With respect to plaintiff's allegations that defendants Cardwell, Casey, Gilbert, and

Haynes failed to investigate and failed to address the issues he complained of in his grievances,

plaintiff has not stated a cognizable claim under § 1983.  Prisoners have no standalone due

process rights related to the administrative grievance process. *See Mann v. Adams,* 855 F.2d 639,

640 (9th Cir. 1988); *see also Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003) (holding that

there is no liberty interest entitling prisoners to a specific grievance process). *See also Smith v.

Calderon,* 1999 WL 1051947 (N.D. Cal. 1999) (finding that failure to properly process

grievances did not violate any constitutional right); *Cage v. Cambra,* 1996 WL 506863 (N.D.

Cal. 1996) (concluding that prison officials' failure to properly process and address grievances

does not support constitutional claim). Moreover, "inmates do not have a liberty interest in

having investigations conducted to their satisfaction." *Campbell v. Thaler*, 2012 WL 32959, at

*4 (E.D. Tex. Jan. 6, 2012); *Anthony v. County of Multnomah*, 2006 WL 278193, *3 (D. Or. Feb,

3, 2006) (an prisoner is not entitled to an investigation conducted in a certain manner).

1   Therefore, the Court concludes plaintiff has failed to state a claim against defendants

2   Cardwell, Casey, Gilbert, and Haynes related to the processing and investigation of his

3   grievances. Because this claim fails as a matter of law, the Court recommends granting

4   defendants' motion to dismiss as to those claims without leave to amend.

5   Lastly, to the extent that plaintiff alleges defendants Haynes and Gilbert are liable based

6   on their supervisory positions, a § 1983 suit cannot be based on vicarious liability alone but must

7   allege the defendant's own conduct violated the plaintiff's civil rights. *City of Canton v. Harris*,

8   489 U.S. 378, 385-90 (1989). However, a plaintiff may state a supervisor liability claim against a

9   supervisor for deliberate indifference "based upon the supervisor's knowledge of and

10  acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca,* 652 F.3d

11  1202, 1207 (9th Cir. 2011). A supervisor is only liable for the constitutional violations of his or

12  her subordinates if (1) the supervisor participated in or directed the violations; or (2) knew of the

13  violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

14  Here, plaintiff provides only alleges that defendants Haynes and Gilbert served as the

15  superintendents of SCCC. Dkt. 21 at 9. These allegations are insufficient to establish the liability

16  of supervisory personnel. Plaintiff has not alleged a causal link between the conduct of

17  defendants Haynes and Gilbert in supervising SCCC staff and any constitutional violation. *See*

18  *Jones*, 733 F.2d at 649 (vague and mere conclusory allegations unsupported by facts are not

19  sufficient to state section 1983 claims). Therefore, the Court recommends dismissing any claims

20  against defendants Haynes and Gilbert based on supervisory liability. However, the Court

21  recommends plaintiff be granted leave to file an amended complaint alleging facts, if any, to

22  support this claim.

23

24

1    **VII.    Defendants Thrasher, Cotton, Corder, and Walden**

2        Plaintiff alleges that defendants Thrasher and Cotton request dismissal of their

3    involvement. Dkt. 21 at 9. Plaintiff's complaint contains no allegations against defendant

4    Walden. Dkt. 21. The only reference to defendant Corder is plaintiff's statement that the actions

5    of defendants Tornquist, Burgher, and Corder have been "ruled in the Plaintiff['s favor by Judge

6    J. Richard Creatura." Dkt. 21 at 5, 9.

7        A complaint must allege in specific terms how each named defendant is involved. *Rizzo*

8    *v. Goode*, 423 U.S. 362, 371 (1976). There can be no liability under § 1983 unless there is some

9    affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo*,

10   423 U.S. at 371; *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980). Furthermore, vague and

11   conclusory allegations of official participation in civil rights violations are not sufficient. *Ivey v.*

12   *Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The statement of the

13   claim must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the

14   grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The factual allegations

15   of a complaint must be "enough to raise a right to relief above the speculative level." *Bell*

16   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

17       Even construing the complaint liberally, it is unclear from plaintiff's complaint how

18   defendants Thrasher, Cotton, Corder, and Walden violated plaintiff's constitutional rights or

19   damaged him in some way. The details of any harm caused to plaintiff by defendants Thrasher,

20   Cotton, Corder, and Walden is not clear. Dkt. 21. The Court cannot discern any actionable claim

21   against these defendants over which it has jurisdiction.

22       Accordingly, the Court recommends plaintiff's claims against defendants Thrasher,

23   Cotton, and Walden be dismissed. Because the Court recommends granting leave to file an

24

1    amended complaint with respect to several of the remaining defendants, plaintiff may also amend

2    his complaint to include additional allegations against defendants Thrasher, Cotton, and Walden,

3    if appropriate. In doing so, plaintiff must allege in specific terms how defendants Thrasher,

4    Cotton, and Walden were involved in any alleged deprivation of his constitutional rights.

5        Defendant Corder has not returned a waiver of service and defense counsel has not

6    appeared on his or her behalf. *See* Dkt. On June 17, 2019, defense counsel filed a notice stating

7    that counsel is unable to determine the identity of defendant Corder and is unable to waive

8    service on his or her behalf. Dkt. 43. On June 19, 2019, the Court ordered plaintiff to file a

9    response by July 18, 2019 providing as much identifying information as possible with respect to

10   defendant Corder under seal so that defendants could identify defendant Corder and the Clerk

11   could effectuate service. As of the date of this report and recommendation, plaintiff has not filed

12   a response to the Court's order.

13       The court has no jurisdiction over defendant Corder until he or she has been properly

14   served under Fed. R. Civ. P. 4. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*,

15   840 F.2d 685, 688 (9th Cir. 1988). Because the Court recommends granting leave to file an

16   amended complaint with respect to several of the remaining defendants, the Court recommends

17   plaintiff be granted leave to amend to file an amended complaint which alleges as much

18   information as possible with respect to defendant Corder. This shall include defendant Corder's

19   full name, position, location of work, and/or any other identifying information. In doing so,

20   plaintiff must also allege in specific terms how defendant Corder was involved in any alleged

21   deprivation of his constitutional rights.

22

23

24

1

## VIII.  Qualified Immunity

2    Defendants also argue that defendants are entitled to qualified immunity. Dkt. 44.

3  Although defendants are entitled to raise qualified immunity in a motion to dismiss, generally

4  speaking, it is better addressed in the context of a motion for summary judgment. *See Wong v.*

5  *United States*, 373 F.3d 952, 956-57 (9th Cir. 2004) (noting it is difficult for courts to decide

6  qualified immunity at the motion to dismiss stage because it forces the Court to decide "far-

7  reaching constitution questions on a nonexistent factual record," and suggesting the issue is

8  better left for summary judgment). When defendants assert qualified immunity in a motion to

9  dismiss under Rule 12(b)(6), "'dismissal is not appropriate unless [the Court] can determine,

10  based on the complaint itself, that qualified immunity applies.'" *O'Brien v. Welty*, 818 F.3d 920,

11  936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)).

12  *See also, Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004) ("The ill-

13  considered filing of a qualified immunity appeal on the pleadings alone can lead not only to a

14  waste of scarce public and judicial resources, but to the development of legal doctrine that has

15  lost its moorings in the empirical world, and that might never need to be determined were the

16  case permitted to proceed, at least to the summary judgment stage."). Thus, at this early stage in

17  the case, the record before the Court is insufficient to determine if qualified immunity is

18  appropriate in this case, and the Court declines to consider it at this time. Defendants may re-

19  raise the defense after further development. *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir.

20  1999) (holding that, in light of the fact that all allegations in the complaint must be regarded as

21  true on a motion to dismiss, "dismissal [on qualified immunity grounds] for failure to state a

22  claim under 12(b)(6) is inappropriate.").

23

24

1

### IX.    Leave to Amend

2      Based on the complaint currently before the Court, defendants are entitled to have their

3 motion to dismiss granted as to most of plaintiff's claims. However, the Ninth Circuit has

4 established that pro se litigants bringing civil rights actions must be given an opportunity to

5 amend their complaint to overcome deficiencies unless it is clear that such deficiencies cannot be

6 overcome by amendment. *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir. 2000).

7      With respect to plaintiff's allegations that defendant Burgher harassed plaintiff when he

8 failed to wake plaintiff up for work and his claims that defendants Cardwell, Casey, Gilbert,

9 Haynes, and Tornquist failed to properly process grievances, because these claims fail as a

10 matter of law, the Court finds further leave to amend will not cure the deficiencies. Accordingly,

11 the Court recommends these claims be dismissed without leave to amend.

12      Plaintiff may be able to overcome the deficiencies of his pleading if he is given an

13 opportunity to amend the following claims against: (1) defendant Burgher for sexual harassment;

14 (2) defendant Bennett for sexual harassment and violations of plaintiff's right to access to the

15 courts and equal protection; (3) defendant Lystad for violations of the Eighth Amendment related

16 to plaintiff's medical treatment; (4) defendant Jolly for due process violations; (5) defendant

17 Sharpe for violations of access to the courts; (6) defendants Cardwell, Casey, Gilbert, Haynes,

18 Burgher, Jones, and Tornquist for failure to protect; (7) defendant Haynes and Gilbert for

19 supervisory liability; and (8) defendants Thrasher, Cotton, Corder, and Walden for any

20 constitutional violations cognizable under § 1983. Accordingly, the Court recommends that

21 plaintiff be allowed to file an amended complaint as to these claims by a date set by the Court.

22

23

24

1

**CONCLUSION**

2          Based on the foregoing, the Court recommends denying in part and granting in part

3   defendant's motion to dismiss (Dkt. 44).

4          Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

5   Procedure, the parties shall have fourteen (14) days from service of this Report to file written

6   objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

7   objections for purposes of appeal. *Thomas v Arn*, 474 U.S. 140 (1985). Accommodating the time

8   limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on August

9   30, 2019 as noted in the caption.

10          Dated this 7th day of August, 2019.

11

12

13

14
                                        J. Richard Creatura
15                                      United States Magistrate Judge

16

17

18

19

20

21

22

23

24