UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT W. HUMPHREYS,

                    Plaintiff,

          v.

LUKE BURGHER,

                    Defendant.

CASE NO. 3:18-cv-05736-RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR:  December 25, 2020

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4.  This matter is before the Court on the parties' cross motions for summary judgment.  Dkts. 93, 94.

Plaintiff alleges that his Eighth Amendment rights were violated when he fell headfirst from the top bunk of his cell and defendant Burgher failed to call for medical assistance after plaintiff requested help.  Viewing the undisputed facts in the light most favorable to plaintiff, there are no facts tending to support the conclusion that defendant acted with deliberate

1    indifference to plaintiff's injury after he fell from his bunk.  Therefore, the Court recommends

2    granting defendant's cross motion for summary judgment (Dkt. 94), denying plaintiff's motion

3    for summary judgment (Dkt. 93), and dismissing this matter with prejudice.

**PROCEDURAL HISTORY**

5        Plaintiff Scott W. Humphreys is a prisoner at Stafford Creek Correctional Center

6    ("SCCC") and is proceeding *pro se* and *in forma pauperis*.  *See* Dkts. 1, 5.  Plaintiff initiated this

7    action in September 2018.  Dkt. 1.  Plaintiff's sixth amended complaint is the operative

8    complaint.  Dkt. 68.  Following a lengthy procedural history and three motions to dismiss (Dkts.

9    44, 63, 70), the sole remaining claim in this matter is against defendant Burgher for the alleged

10   violation of plaintiff's Eighth Amendment rights.  *See* Dkts. 68, 79.

11       On September 16, 2020, plaintiff filed his motion for summary judgment, which includes

12   an affidavit and several exhibits in support of his motion.  *See* Dkt. 93.  Plaintiff's sixth amended

13   complaint, to which plaintiff attached several exhibits, was signed under penalty of perjury and is

14   being considered as evidence.  Dkt. 68.  Because plaintiff is *pro se*, the Court "must consider as

15   evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in

16   motions and pleadings, where such contentions are based on personal knowledge and set forth

17   facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury

18   that the contents of the motions or pleadings are true and correct."  *Jones v. Blanas*, 393 F.3d

19   918, 923 (9th Cir. 2004).

20       Defendant filed his response and cross motion for summary judgment, along with a

21   notice of dispositive motion on October 2, 2020.  *See* Dkts. 94, 97; *see also Rand v. Rowland*,

22   154 F.3d 952 (9th Cir. 1998).  In support of his cross motion for summary judgment, defendant

23

24

REPORT AND RECOMMENDATION - 2

1  relies on his own declaration (Dkt. 95), as well as a declaration from a physician's assistant, Erin

2  Lystad, P.A. (Dkt. 96), and plaintiff's complaint and exhibits.  Dkt. 68.

3      Plaintiff did not file a reply to defendant's response and cross motion for summary

4  judgment, and the parties' cross motions for summary judgment are now ripe for decision.

5                                    **FACTUAL BACKGROUND**

6      The Court begins by summarizing the facts of this case from the parties' pleadings,

7  summary judgment briefing, and the evidence submitted in support thereof.  The facts are

8  undisputed except as noted.

9      On July 9, 2016, at approximately 4:00 a.m., plaintiff alleges that he fell headfirst from

10  the top bunk in his cell and that he was unconscious for approximately 15 minutes.  Dkt. 68, at 4,

11  11.  Plaintiff alleges that after he "woke up," defendant came to plaintiff's door and asked if

12  plaintiff was going to work.  *Id.*  After plaintiff explained that he had just fallen headfirst from

13  the top bunk, defendant "walked away."  *Id*.  Defendant does not dispute that he was on duty in

14  plaintiff's unit on July 9, 2016; however, he states that he did not see plaintiff fall from his bunk.

15  *See* Dkt. 95, at 1–2.  Defendant further states that as a corrections officer, it was part of his job to

16  "wake up inmates early in the morning so that they could get to their prison jobs on time."  *Id.* at

17  2.  However, defendant asserts that he "did not realize at the time that [plaintiff] had a significant

18  injury."  *Id.*  For his part, plaintiff maintains that he told defendant that he fell, and therefore,

19  defendant should have known—or at least suspected—that plaintiff was injured when defendant

20  walked away.  *See* Dkt. 68, at 4–5.  Yet plaintiff has failed to provide any facts to support this

21  conclusion other than he told defendant that he fell.  There is no evidence that defendant

22  observed anything unusual about plaintiff's condition.  To the contrary, defendant maintains, and

23

24

1    plaintiff does not dispute, that plaintiff's "conduct did not alert [defendant] that [plaintiff] was

2    seriously injured." Dkt. 95, at 2.

3        Although plaintiff alleges that he "stumbled" to the restroom and "started shak[ing]"

4    when he returned to his cell, plaintiff does not allege that defendant observed this conduct. Dkt.

5    68, at 4–5.

6        Plaintiff alleges that he later went to find defendant but found him sleeping and requested

7    that defendant call medical. Dkt. 68, at 5. Plaintiff alleges that defendant picked up the phone

8    and "acted like" he called medical but stated that no one was there and instructed plaintiff to "try

9    next shift." *Id.* Defendant does not dispute that plaintiff came to see him or that plaintiff

10    requested that defendant call medical. Dkt. 95, at 2. However, defendant states that he was not

11    asleep at the time and that he did in fact call medical and no one answered. Dkt. 95, at 2.

12    Defendant states that he asked plaintiff "whether he was having an emergency or whether he

13    could wait until sick call. [Plaintiff] told [defendant] he would be okay until sick call the next

14    morning." *Id.* at 2–3. Defendant further states that he reported the incident to the corrections

15    officers working the next shift. *Id.* at 3.

16        Plaintiff alleges that he returned to his cell and asked his cellmate to get help from a

17    different officer. Dkt. 68, at 5. Plaintiff alleges that when he was ultimately seen by medical,

18    four hours after his fall, a medical employee who saw plaintiff informed him that "no one called,

19    and someone is always there." *Id.* Defendant states that "while it is true that there is always

20    someone in medical during the night," it is "not unusual . . . for them not to answer their phone."

21    Dkt. 95, at 2. Plaintiff alleges that he was given medication and an ACE bandage and was told to

22    report to sick call on July 11, 2016, to see a provider for follow up. Dkt. 68, at 5, 11.

23

24

1    Plaintiff claims that he has suffered, among other things, recurring head pain, concussion,

2  traumatic brain injury, pain in various parts of his body, and various additional symptoms

3  including blood and ringing in his ears, double vision, coughing up blood and numbness. *Id*. at

4  5. Plaintiff requests compensatory and punitive damages, as well as declaratory and injunctive

5  relief. *See id.* at 9.

6  **SUMMARY JUDGMENT LEGAL STANDARD**

7    Summary judgment is appropriate if a moving party shows that "there is no genuine

8  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

9  R. Civ. P. 56(a). The materiality of a given fact is determined by the required elements of the

10  substantive law under which the claims are brought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

11  242, 248 (1986). Factual disputes that do not affect the outcome of the suit under the governing

12  law will not be considered. *Id.*

13    Where there is a complete failure of proof concerning an essential element of the non-

14  moving party's case on which the nonmoving party has the burden of proof, all other facts are

15  rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*

16  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the

17  evidence presented through the prism of the substantive evidentiary burden"). However, when

18  presented with a motion for summary judgment, the court shall review the pleadings and

19  evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation

20  omitted), and "a *pro se* complaint will be liberally construed. . . ." *Pena v. Gardner,* 976 F.2d

21  469, 471 (9th Cir. 1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation

22  omitted).

23

24

Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The opposing party cannot rest solely on his pleadings but must produce significant, probative evidence in the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to find in his favor. *Id.* at n. 11; *Anderson*, 477 U.S. at 249–50. However, weighing of evidence and drawing legitimate inferences from facts are jury functions, and not the function of the court. *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989). And if the moving party has not met its burden on summary judgment, the Court will not grant the motion—even if there is no opposition to the motion. *See Henry v. Gill Inds.*, 983 F.2d 943 950 (9th Cir. 1993) ("Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues.").

When parties file cross motions for summary judgment, as the parties have done here, each motion "must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The court must review the evidence submitted in support of each cross motion. *Id*. And, although the parties may each assert there are no uncontested issues of material fact, the Court has a responsibility to determine whether disputed issues of material fact are present. *Id*.; *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1148 (D. Idaho 2010).

## DISCUSSION

Plaintiff alleges that defendant violated his Eighth Amendment rights when defendant failed to call for medical assistance after plaintiff requested help. *See* Dkt. 68, at 4–5. Defendant

1    argues that plaintiff's claim fails as a matter of law because plaintiff has failed to show that

2    defendant acted with deliberate indifference to plaintiff's serious medical need.  *See* Dkt. 94.  For

3    the reasons set forth below, the Court finds that there is no genuine issue of material fact, and

4    defendant is entitled to summary judgment as a matter of law.

5          **I.**      **Section 1983 Principles**

6          In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the

7    conduct complained of was committed by a person acting under color of state law and that (2)

8    the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or

9    laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other*

10    *grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986).  A third element of causation is implicit in

11    the second element.  *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286–

12    87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390–91 (9th Cir. 1980), *cert denied*, 449 U.S. 875

13    (1980).

14          A 42 U.S.C. § 1983 claim for damages against a person in his individual capacity

15    requires a showing that the person's conduct proximately caused the constitutional violation.  *See*

16    *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  "A person deprives another 'of a

17    constitutional right, within the meaning of section 1983, if he does an affirmative act,

18    participates in another's affirmative acts, or omits to perform an act which he is legally required

19    to do that *causes* the deprivation of which [the plaintiff complains].'"  *Leer v. Murphy*, 84 F.2d

20    628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

21          **II.**      **Deliberate Indifference**

22          To establish a claim under the Eighth Amendment due to inadequate medical care, a

23    plaintiff must show "deliberate indifference" by prison officials to a "serious medical need."

24

1    *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Thus,

2    the claim has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the

3    nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th

4    Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th

5    Cir. 1997).

6         A medical need is serious "if the failure to treat the prisoner's condition could result in

7    further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974

8    F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable

9    doctor or patient would find important and worthy of comment or treatment" is an example of

10   indication that a prisoner has a serious need for medical treatment. *Id.* at 1059–60.

11        If a plaintiff shows that he suffered from a serious medical need, he must then show that

12   the prison official responded with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825,

13   834 (1970). Deliberate indifference to a prisoner's serious medical need requires "a purposeful

14   act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words,

15   "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible

16   medical need." *Id.* A prison official, accordingly, will not be found deliberately indifferent to a

17   prisoner's serious medical needs "unless the official knows of and disregards an excessive risk to

18   inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts

19   from which the inference could be drawn that a substantial risk of serious harm exists, and he

20   must also draw the inference." *Id.* Inadvertent or negligent failures to provide adequate medical

21   care are insufficient to make out a claim under 41 U.S.C. § 1983. *Estelle*, 429 U.S. at 105–106.

22   Rather, a plaintiff must show at least subjective recklessness. *See Snow v. McDaniel*, 681 F.3d

23

24

1  978, 985 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076,

2  1082–83 (9th Cir. 2014).

3      Deliberate indifference may exist when prison officials "deny, delay or intentionally

4  interfere with medical treatment, or it may be shown by the way in which prison physicians

5  provide medical care." *McGuckin*, 974 F.2d at 1059 (internal quotations and citations omitted).

6  However, a plaintiff must demonstrate that the delay led to further injury. *See Id.* at 1060.

7      **A.      Deliberate Indifference**

8      Defendant argues that he never drew the inference that plaintiff needed immediate

9  medical attention for his injuries and that defendant's conduct does not represent reckless

10  conduct. *See* Dkt. 94, at 10–11.

11      In support of his argument, defendant's version of the facts as stated in his declaration are

12  as follows:  On July 9, 2016, defendant was working as a corrections officer during the

13  "graveyard shift" at the time plaintiff fell, but he did not see plaintiff fall from his bunk.  Dkt. 95,

14  at 1–2.  Defendant remembers that plaintiff was "walking and talking" when he first saw

15  plaintiff, that he was able to walk to the bathroom and return to his cell, and that plaintiff's

16  conduct did not alert defendant that plaintiff was seriously injured.  Dkt. 95, at 2.  When plaintiff

17  later requested that defendant call medical health services, defendant called, but no one

18  answered.  *Id.*  Defendant then asked plaintiff whether he was having a medical emergency or

19  whether he could wait until sick call in the morning to see medical.  *Id.*  2–3.  Plaintiff told

20  defendant that he "would be okay until sick call the next morning."  *Id.* at 3.  Based on plaintiff's

21  conduct, defendant "did not understand at the time that [plaintiff]'s condition represented an

22  emergency.  After that [he] reported the incident to the corrections officers working the next

23  shift, and it is [his] understanding that [plaintiff] did go to medical in the morning."  *Id.*

24

1    Although the parties dispute whether defendant actually called medical health services on

2    July 9, 2016, plaintiff provides no facts or evidence to rebut defendant's evidence that plaintiff

3    told him he could wait for sick call in the morning.  Rather, plaintiff concludes that defendant's

4    failure to immediately procure medical treatment shows deliberate indifference.  But this kind of

5    conclusory allegation is insufficient to defeat summary judgment.  *See Leer*, 84 F.2d at 633.

6         Thus, the undisputed facts and uncontroverted evidence establish at most that plaintiff

7    told defendant that he fell from his bunk, that plaintiff was able to talk and move to and from his

8    cell, that he asked defendant to call medical health services, and that plaintiff told defendant that

9    he could wait to see medical until sick call in the morning.  *See* Dkts. 68, at 5, 11, 14; 95, at 2–3.

10   This is insufficient to show that defendant actually knew of (or should have assumed) and

11   disregarded an excessive risk to plaintiff's health or acted with subjective recklessness where

12   plaintiff disclaimed need for immediate medical care.  *Farmer*, 511 U.S. at 837 ("[T]he official

13   must both be aware of facts from which the inference could be drawn that a substantial risk of

14   serious harm exists, and he must also draw the inference."); *Snow*, 681 F.3d at 985 (a plaintiff

15   must show at least subjective recklessness).

16        Therefore, even viewed in the light most favorable to him, plaintiff has failed to show

17   that defendant acted with deliberate indifference to plaintiff's serious medical need.  *See Farmer*,

18   511 U.S. at 837.  Because plaintiff has come forward with no evidence from which a trier of fact

19   could find in his favor on his claim of deliberate indifference, his claim should be dismissed.

20   *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Anderson*, 477 U.S. at 249–50.  Accordingly,

21   plaintiff's motion for summary (Dkt. 93) should be denied, defendant's cross motion for

22   summary judgment (Dkt. 94) should be granted, and plaintiff's claim against defendant under the

23   Eighth Amendment should be dismissed with prejudice.

24

1          **B.          Whether Any Delay in Treatment Exacerbated Plaintiff's Condition**

2          Defendant next argues that plaintiff's claim must fail as a matter of law because any

3    delay in plaintiff's medical treatment did not exacerbate his condition.  Dkt. 94, at 11–12.  Even

4    assuming that that defendant knew of and purposefully disregarded an excessive risk to

5    plaintiff's serious medical need (*see supra*, Section II(A)), the Court finds that plaintiff's claim

6    also fails as a matter of law because plaintiff has presented no evidence establishing a material

7    issue of fact that any delay in treatment led to further injury.

8          "Denial of medical attention to prisoners constitutes an [E]ighth [A]mendment violation

9    if the denial amounts to deliberate indifference to serious medical needs of the prisoners."

10   *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986), *abrogated in part on other grounds*

11   *by Sandin v. Connor*, 515 U.S. 472 (1995) (citing *Estelle*, 429 U.S. at 106).  Delay of, or

12   interference with, medical treatment can also amount to deliberate indifference.  *See Jett v.*

13   *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  However, a plaintiff must demonstrate that any

14   delay led to further injury.  *See McGuckin*, 974 F.2d at 1060.

15         The parties do not dispute that plaintiff received medical treatment approximately four

16   hours after he fell from his bunk.  *See* Dkts. 68, at 5; 94, at 11–12.

17         Defendant has provided the declaration of a physician's assistant stating that plaintiff

18   received "appropriate medical treatment for the injuries he reported on July 9, 2016," that x-rays

19   of plaintiff's knee "revealed no acute fracture of the right knee, minimal mediolateral

20   compartment osteoarthritis, and small to moderate joint effusion," and that x-rays of plaintiff's

21   chest "showed no radiographic evidence of acute displaced right rib fracture but was suggestive

22   of pneumonia."  Dkt. 96, at 3–4; *see also* Dkt. 68, at 14–15.  The physician's assistant further

23   declares that pneumonia "is the likely cause of [plaintiff']s chest pain, not his claimed fall."  Dkt.

24

96, at 3.  The physician's assistant also states that during medical treatment following plaintiff's injury, plaintiff did not report any head injury and denied nausea or headache.  *Id.* at 2–3 (citing Dkt. 68, at 14–15).  In the physician's assistant's opinion, "[i]t is extremely unlikely that the four hours between his fall . . . and his later treatment . . . exacerbated his injuries in any way."  *Id.* at 4.

Although plaintiff concludes that he suffers permanent injury, plaintiff provides no additional facts or evidence to rebut defendant's assertion that any delay in receiving medical treatment did not exacerbate his injuries.  Indeed, plaintiff's own evidence shows that plaintiff did not complain of any residual injury or pain other than knee and chest pain connected to his July 9, 2016, fall.  *See* Dkt. 68, at 11, 14–15.  Plaintiff's evidence further shows that he complained of headaches and coughing in connection with reoccurring sinus infections—not in connection with his July 9, 2016, fall.  *See id.* 17.  Other than concluding that he suffers permanent damage, plaintiff fails to link any evidence of such damage to any delay in receiving medical treatment on July 9, 2016.

Therefore, even viewed in the light most favorable to him, plaintiff has failed to show that defendant acted with deliberate indifference to plaintiff's serious medical need by delaying any medical treatment.  *See Farmer*, 511 U.S. at 837.  Accordingly, plaintiff's motion for summary (Dkt. 93) should be denied on this ground, as well, defendant's cross motion for summary judgment (Dkt. 94) should be granted, and plaintiff's claim under the Eighth Amendment against defendant should be dismissed with prejudice.

## C.    Remaining Issues

Defendant also argues that plaintiff's claim under the Eighth Amendment fails as a matter of law because (1) the allegations against defendant represent no more than an isolated instance

1  of neglect, which does not constitute an Eighth Amendment violation, and (2) that defendant is

2  entitled to qualified immunity from liability for damages. *See* Dkt. 94, at 12—14. Because the

3  Court has already determined that defendant is entitled to summary judgment, the Court declines

4  to determine whether defendant is entitled to summary judgement or is immune from damages

5  on these additional grounds.

6  **III.    *In Forma Pauperis* Status on Appeal**

7  The Court recommends revoking plaintiff's *in forma pauperis* ("IFP") status for purposes

8  of appeal. IFP status on appeal shall not be granted if the district court certifies "before or after the

9  notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A);

10  *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks

11  review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable

12  basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490

13  U.S. 319, 325 (1989). As discussed above, plaintiff has failed to identify a genuine issue of

14  material fact and the law is clear that defendant did not violate his Eighth Amendment rights. As

15  such, the Court recommends that plaintiff's *in forma pauperis* status be revoked for purposes of

16  any appeal.

17  **CONCLUSION**

18  The undersigned recommends that that plaintiff's motion for summary judgment (Dkt.

19  93) be denied; that defendant's cross motion for summary judgment (Dkt. 94) be granted; that

20  plaintiff's claim should be dismissed with prejudice; and that plaintiff's *in forma pauperis* status

21  be revoked for any appeal.

22  Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

23  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

24

6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **December 25, 2020**, as noted in the caption.

Dated this 8th day of December, 2020.

J. Richard Creatura
United States Magistrate Judge